**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| John Evans,<br><br>Plaintiff,<br><br>vs.<br><br>General Motors LLC,<br><br>Defendant. | **CASE NO.:** ________________<br><br>**COMPLAINT** |

For this Complaint, the Plaintiff John Evans, by undersigned counsel, states as follows:

**PRELIMINARY STATEMENT**

1. This is an action by the purchaser of a 2024 GMC Sierra 1500 Denali vehicle (hereafter the "subject vehicle") manufactured and warranted by the Defendant General Motors LLC. The subject vehicle is equipped with Defendant's 6.2L V-8 "L87" engine, one of approximately 597,630 engines that Defendant recalled because they contain manufacturing defects that cause the engines to sustain internal damage, fail, and lose propulsion without warning. Plaintiff seeks damages related to his vehicle's defective engine and Defendant's failure to honor the terms of its warranty.

2. The Plaintiff would not have purchased the subject vehicle had he been made aware of the subject vehicle's defects.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs.

4. The amount in controversy exceeds $50,000.00, exclusive of interest and costs, and includes the purchase price of the Vehicle, sales and use taxes, title, license, and registration fees, finance charges, and incidental and consequential damages, together with Plaintiff's claim for a refund of all sums paid, revocation of acceptance, and reasonable attorney's fees.

5. The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal, directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

7. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District.

**PARTIES**

8. Plaintiff John Evans was, at all relevant times, an adult individual who resides in Joint Base Andrews, Prince George's County, Maryland, and who purchased the subject vehicle in Woodbridge, Prince William County, Virginia, which was manufactured or sold by Defendant.

9. Defendant General Motors LLC ("GM") is organized under the laws of Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit, Michigan 48226. At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the State of Virginia and throughout the United States.

## FACTUAL ALLEGATIONS

10. On February 23, 2026, Plaintiff purchased a 2024 GMC Sierra 1500 Denali equipped with the L87 6.2L V-8 engine, Vehicle Identification Number 3GTUUGEL5RG209146 (hereafter the "Vehicle") from Koons Ford Woodbridge, located at 13779 Noblewood Plaza, Woodbridge, Prince William County, Virginia 22193 (hereinafter "Koons Ford"), for personal, family, or household use.

11. The purchase price of the Vehicle was $59,502.95, including options, fees, taxes, and other charges.

12. At the time of delivery, the Vehicle's odometer read 59,959 miles.

13. Prior to purchasing the Vehicle, Plaintiff relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty and Limited Powertrain Warranty, including the representation that Defendant would repair the Vehicle; these representations were material to Plaintiff's decision to purchase the Vehicle.

14. Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile period following such vehicle delivery to the consumer. Additionally, Defendant promised to repair or replace the powertrain components, including the Vehicle's engine, found to be defective in material or workmanship during the 5-year / 60,000-mile period following such vehicle delivery to the consumer. Because the Vehicle was purchased used, the unexpired balance of Defendant's New Vehicle Limited Warranty and Limited Powertrain Warranty transferred to Plaintiff upon his purchase of the Vehicle.

15. On February 23, 2026, and following the execution of the Vehicle purchase documents, Plaintiff took delivery of the Vehicle.

16. Defendant designates the Vehicle's 6.2L V-8 engine by its Regular Production Option code L87 (hereafter the "L87 engine").

17. On April 24, 2025, Defendant submitted a Part 573 Safety Recall Report to the National Highway Traffic Safety Administration, assigned NHTSA Recall No. 25V-274 and Defendant's own recall number N252494000, covering approximately 597,630 model year 2021 through 2024 vehicles equipped with the L87 engine, including 2024 GMC Sierra 1500 vehicles such as the Vehicle.

18. In that report, Defendant disclosed that the engines in the recalled vehicles "may have manufacturing defects that can lead to engine damage and engine failure," and identified two root causes: rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish.

19. Defendant further disclosed that the suspect engine build period ran from March 1, 2021, through May 31, 2024, and that between April 29, 2021, and February 3, 2025, Defendant had received 28,102 field complaints concerning the L87 engine, of which 14,332 involved a loss of propulsion. Upon information and belief, the Vehicle's engine was manufactured within that suspect build period.

20. Defendant began receiving field complaints of L87 engine failures on or about April 29, 2021, and Defendant opened and closed an internal investigation into those failures in February 2022. Upon information and belief, and through its pre-production and pre-sale design validation, durability, and quality testing, its supplier and manufacturing quality data concerning the connecting rods and crankshafts, and its internal engineering analyses, Defendant knew of the L87 engine defect before it manufactured and first sold the Vehicle.

21. On April 24, 2025 – more than ten months before Plaintiff purchased the Vehicle on February 23, 2026 – Defendant publicly disclosed the L87 engine defect and the recall. Notwithstanding that disclosure, Defendant did not repair or replace the L87 engine in the Vehicle, and the recall remained unremedied, at the time Plaintiff purchased the Vehicle.

22. In connection with the recall, Defendant also issued Special Coverage Adjustment N252494003, by which Defendant undertook to repair or replace the L87 engine, without charge to the owner, for a period of ten (10) years or 150,000 miles from the vehicle's original in-service date, whichever occurred first. That special coverage applies to the Vehicle and constitutes a written warranty running from Defendant to Plaintiff.

23. Since the time of Vehicle delivery to the present, the Vehicle has been out of service at least seventy-seven (77) days due to the catastrophic engine failure and other defects.

24. On or about March 27, 2026, while Plaintiff was operating the Vehicle on the interstate, the Vehicle warned that shift conditions were not correct, the Vehicle decelerated from highway speed to a complete stop, the Vehicle's engine shut off, the Vehicle would not restart, and the Vehicle had to be towed in.

25. The Vehicle was towed to Ourisman Chevrolet Buick GMC of Alexandria, Defendant's authorized dealership located at 1800 Old Richmond Highway, Alexandria, Virginia 22303 (hereinafter "Ourisman").

26. At the time the Vehicle's odometer read 60,502 miles.

27. Ourisman verified the concern and determined that the Vehicle's engine had sustained a catastrophic internal failure and would have to be replaced. Ourisman attempted a warranty repair by replacing the Vehicle's engine, and further installed a new radiator, a new

drive belt kit, and new engine gaskets, seals, bolts, pipes, and hoses, refilled and bled the cooling system, filled the engine with engine oil, and replaced the Vehicle's battery.

28. During this visit, the Vehicle was out of service for at least seventy-seven (77) days, and was released on or about June 12, 2026.

29. Upon information and belief, the failure of the Vehicle's engine was caused by the same L87 engine defect that Defendant reported to the National Highway Traffic Safety Administration – rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish. That the engine seized and could not be restarted, and had to be replaced outright, is the signature of precisely that internal engine failure.

30. The Vehicle's engine failed after Plaintiff had driven the Vehicle only approximately 543 miles, at an odometer reading of 60,502 miles – well within the ten-year / 150,000-mile term of Special Coverage Adjustment N252494003. Defendant performed the engine replacement without charge to Plaintiff, as a warranty repair, thereby treating the Vehicle as covered by Defendant's warranty and confirming that the failure fell within Defendant's warranty obligations.

31. Upon information and belief, the replacement engine that Defendant installed in the Vehicle was itself manufactured, or remanufactured, within, or to the same specifications as engines manufactured within, the March 1, 2021, through May 31, 2024, suspect build period, and carries the same L87 engine defect.

32. Although Defendant had disclosed the L87 engine defect to the National Highway Traffic Safety Administration and to the public on April 24, 2025, Defendant did not repair or replace the L87 engine in the Vehicle in the interval between that disclosure and the

engine's failure, and instead left Plaintiff to suffer a sudden loss of propulsion caused by the very defect Defendant had already reported.

33. A vehicle whose engine can sustain catastrophic internal damage, seize, and lose propulsion without warning while being driven at highway speed presents an unreasonable risk to the safety of Plaintiff, his passengers, and the motoring public.

34. As a result of the L87 engine defect, the catastrophic engine failure, and the replacement of the Vehicle's engine, the Vehicle is worth substantially less than a comparable vehicle without such repair history, and Plaintiff has suffered a diminution in the value of the Vehicle.

35. Had Plaintiff known of the L87 engine defect at the time of purchase, he would not have purchased the Vehicle, or would have paid substantially less for it.

36. By U.S. First Class Mail sent on June 11, 2026, Plaintiff notified Defendant of the above-mentioned nonconformities with the Vehicle and Defendant's failure to conform the Vehicle to the terms of Defendant's express warranty within a reasonable period of time. Within the same letter, Plaintiff revoked his acceptance of the Vehicle.

37. The defects experienced by Plaintiff substantially impair the use, value, and safety of the Vehicle.

38. Plaintiff provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Vehicle.

39. The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Vehicle within a reasonable amount of time.

**FIRST CAUSE OF ACTION**
**Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***

40. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

41. The Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

42. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

43. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

44. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

45. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiff.

46. Defendant has failed to remedy the subject vehicle's engine defect within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

47. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff has suffered damages.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* and Va. Code § 8.2-314**

48. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49. Defendant is a merchant with respect to motor vehicles.

50. The Vehicle was subject to the implied warranty of merchantability, as defined in Va. Code § 8.2-314, running from the Defendant to the Plaintiff.

51. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the purchase of the subject vehicle.

52. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when Plaintiff purchased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

53. Plaintiff notified Defendant of the defect in the subject vehicle within a reasonable time after Plaintiff discovered it.

54. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.

## THIRD CAUSE OF ACTION
## Breach of Express Warranty, Va. Code § 8.2-313

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. In connection with the sale of the subject vehicle to the Plaintiff, Defendant provided Plaintiff with a New Vehicle Limited Warranty and Limited Powertrain Warranty, and subsequently issued Special Coverage Adjustment N252494003, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

57. Plaintiff relied on Defendant's warranty when he agreed to purchase the subject vehicle and Defendant's warranty was part of the basis of the bargain.

58. Plaintiff submitted his Vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiff, by failing to repair the dangerous engine defect under the Vehicle's warranty as described herein within a reasonable period of time.

59. Plaintiff has given Defendant reasonable time to cure said defects, but Defendant has been unable and/or has refused to do so within a reasonable time.

60. As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

61. The Plaintiff could not reasonably have discovered said nonconformities with the subject vehicle prior to Plaintiff's acceptance of the subject vehicle.

62. The Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to the time of purchase, that the subject vehicle contained a defective engine.

63. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of his vehicle, and a diminution in the value of the subject vehicle containing the defects identified herein.

## FOURTH CAUSE OF ACTION
**Revocation of Acceptance, Va. Code § 8.2-608**

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. Plaintiff reasonably assumed, and Defendant represented, that all of the aforesaid defects would be cured within a reasonable time.

66. After a lengthy opportunity provided to Defendant to cure, it has become apparent that said defects cannot be seasonably cured.

67. The defects substantially impair the value of the Vehicle to the Plaintiff.

68. By a letter dated June 11, 2026, the Plaintiff notified Defendant of said defects and of Plaintiff's intent to revoke acceptance and demanded return of the purchase price of said Vehicle.

69. Defendant has nevertheless failed to make a good-faith response to this demand.

70. As a result of Defendant's conduct the Plaintiff has been damaged.

## FIFTH CAUSE OF ACTION
## Violation of the Virginia Consumer Protection Act, Va. Code §§ 59.1-196, *et seq.* – Unfair and Deceptive Practice

71. The Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

72. Plaintiff is a "person" within the meaning of Va. Code § 59.1-198, and Defendant is both a "person" and a "supplier" within the meaning of Va. Code § 59.1-198.

73. The Vehicle is "goods" within the meaning of Va. Code § 59.1-198, and Plaintiff's purchase of the Vehicle for personal, family, or household use was a "consumer transaction" within the meaning of Va. Code § 59.1-198.

74. Va. Code § 59.1-200(A) prohibits a supplier from engaging in specified fraudulent acts or practices committed by a supplier in connection with a consumer transaction.

75. In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the subject vehicles, including the Plaintiff's vehicle, equipped with the 6.2L V-8 L87 engine are defective. The existence of the defect, which manifests in

all or substantially all of the subject vehicles equipped with the 6.2L V-8 L87 engine, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, requires expensive and inconvenient maintenance efforts, and causes the subject vehicles to be worth substantially less than they would otherwise be valued. Defendant's failure to disclose the defects and their ramifications offends public policy and is unethical, unscrupulous, and substantially injurious to consumers.

76. Accordingly, in violation of Va. Code § 59.1-200(A), Defendant, in connection with a consumer transaction, misrepresented that the subject vehicles have characteristics, uses, or benefits which they do not have, in violation of Va. Code § 59.1-200(A)(5); misrepresented that the subject vehicles are of a particular standard, quality, grade, style, or model when they are of another, in violation of Va. Code § 59.1-200(A)(6); and used other deception, fraud, false pretense, false promise, or misrepresentation in connection with the consumer transaction, in violation of Va. Code § 59.1-200(A)(14).

77. Defendant's conduct proximately caused injuries to Plaintiff.

78. Plaintiff was injured as a result of Defendant's conduct in that Plaintiff overpaid for the subject vehicle and did not receive the benefit of the bargain, and the subject vehicle has suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

79. Pursuant to Va. Code § 59.1-204, Plaintiff is entitled to recover his actual damages or $500, whichever is greater, and, because Defendant's violations were willful, up to three times his actual damages or $1,000, whichever is greater, together with reasonable attorney's fees and court costs.

## **DEMAND FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against Defendant as follows:

a. An order approving revocation of acceptance of the subject vehicle;

b. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff on the subject contract;

c. Incidental and consequential damages;

d. Treble damages and statutory damages pursuant to Va. Code § 59.1-204;

e. Reasonable attorney's fees;

f. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 12, 2026

By: /s/ Sergei Lemberg

Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*